**Robert D. SPICKLER, Plaintiff**

v.

**Carroll R. LEE, et al., Defendants**

**No. 02–CV–67–B–S.**

United States District Court,
D. Maine.

July 1, 2002.

Robert D. Spickler, Phippsburg, ME, Pro se.

Paul W. Chaiken, Rudman & Winchell, Bangor, ME, for Defendants.

## ORDER

SINGAL, District Judge.

A land owner, filing pro se, sued three managers of Bangor Hydro Electric Company ("Bangor Hydro"), alleging violations of federal and state law arising from Bangor Hydro's refusal to erect power lines to his property free of charge. Presently before the Court is Defendants' Motion to Dismiss pursuant to Rule 12(b)(6) (Docket # 2). For the following reasons, the Court GRANTS the Motion.[1]

## I. LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6), Plaintiff need only satisfy the notice requirements of Rule 8(a) of a short, plain statement of the grounds for jurisdiction and his claim, and a demand for relief. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992, 998, 152 L.Ed.2d 1 (2002) (citing Fed.R.Civ.P. 8(a)). This is not a high threshold. The Court takes all of Plaintiff's well-pleaded facts as true and draws all reasonable inferences in Plaintiff's favor. *Gorski v. New Hampshire Dep't. of Corr.*, 290 F.3d 466, 473 (1st Cir.2002). Only when it appears from the allegations that Plaintiff cannot prove any set of facts entitling him to relief will the Court dismiss the claims. *Id.*

Applying this standard, the Court accepts the following facts as true.

## II. FACTS

In 1967, Plaintiff Robert D. Spickler bought a large tract of coastal land in Roque Bluffs, Maine, intending to subdivide it for residential development. Because the land was remote and without electricity, Spickler sought the assurance of Bangor Hydro, the local power company, that it would install power lines to his building sites. Bangor Hydro orally agreed to construct the lines, free of charge, as soon as three houses were under construction in the subdivision.

Over the next thirty-five years, Spickler improved the property and sold over forty lots, promising purchasers that power would eventually be supplied as promised by Bangor Hydro. When construction began on a third house in the subdivision in 2001 or 2002, Spickler contacted Defendant Carroll R. Lee, Bangor Hydro's President and Chief Operating Officer, and asked him to begin construction of the power

---

**1.** Although Plaintiff supplemented the allegations in his Complaint with facts in his reply memorandum (Docket # 3) and a supporting affidavit (Docket # 4), the Court is not required to convert the motion to one for summary judgment pursuant to Rule 12(e). Because Plaintiff is representing himself pro se, the Court will give him a liberal opportunity to articulate his claims. *See Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Arnold v. Moore*, 980 F.Supp. 28, 33 (D.D.C.1997).

lines free of charge. Lee refused, as did Defendant Frederick S. Samp, Bangor Hydro's Vice President and Chief Financial Officer, and Defendant Darrell L. Miles, Bangor Hydro's Division Manager. Instead, Defendants offered to construct the line at Spickler's expense, to the tune of roughly $80,000.

Spickler contacted the Maine Public Utility Commission ("MPUC") to complain, and spoke with a person identified as "Mr. Dunn." Dunn informed him that Bangor Hydro had "canceled" all of its pre–1990 contracts, and that the MPUC had consented to its doing so. He also informed Spickler that the MPUC could not help him resolve his complaint, and refused to schedule a hearing on the matter.

Spickler responded by filing suit in this Court, alleging that Lee, Samp and Miles had violated his Fourteenth Amendment rights to due process and equal protection of the laws, actionable pursuant to 42 U.S.C. § 1983. He also alleged that their actions had harmed the "reputation of [his] subdivision," and that they had been unjustly enriched by his efforts to develop the land. Lee, Samp and Miles moved to dismiss for failure to state a claim upon which relief can be granted, and lack of pendent jurisdiction.

III. DISCUSSION

A. § 1983 Claims

 A § 1983 claim comprises two elements: (1) the deprivation of a constitutionally or statutorily protected right; (2) by a person acting under color of law. Id.; Collins v. Nuzzo, 244 F.3d 246, 250 (1st Cir.2001) (quoting Chongris v. Board of Appeals, 811 F.2d 36, 40 (1st Cir.1987)). Plaintiff argues that Defendants, in their capacities as Bangor Hydro employees, deprived him of Fourteenth Amendment due process and equal protection rights. Bangor Hydro is a private entity. Thus, Plaintiff only states a claim if he can prove

any set of facts, consistent with his Complaint, establishing that Defendants are nevertheless state actors for purposes of § 1983.

 A person acts under color of law, or is a "state actor," if his actions are "fairly attributable to the state." Barrios–Velazquez v. Asociacion De Empleados Del Estado Libre Asociado De Puerto Rico, 84 F.3d 487, 491 (1st Cir.1996) (quoting Rendell–Baker v. Kohn, 457 U.S. 830, 838, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982)). The Supreme Court has recognized that a private entity acts under color of state law when its action results from a State's coercive power; when it is controlled by an agency of the state; when it has been delegated an exclusive public function; or when it is "entwined" in governmental policies, or the government is "entwined in its management or control." Brentwood Academy v. Tennessee Secondary Sch. Athletic Ass'n, 531 U.S. 288, 296, 121 S.Ct. 924, 148 L.Ed.2d 807 (2001) (collecting cases). All of these tests nevertheless require the Court to exercise its "normative judgment," such that "no one fact" or "set of circumstances" can uniformly serve as a proxy for labeling private entities or persons as state actors. Id. at 295–96, 121 S.Ct. 924.

Plaintiff argues that Defendants became state actors when the MPUC allowed Defendants to "cancel" Bangor Hydro's contract with Plaintiff, and refused to schedule a hearing to discuss Plaintiff's dispute with Defendants. In Jackson v. Metropolitan Edison Co., 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974), however, the Supreme Court rejected a similar argument from a plaintiff who claimed that a state utilities commission had endowed an electric utility with state actor status. The utilities commission had failed to object to the utility's policy of terminating electric service to customers for nonpayment, essentially allowing the utility to cut off the

plaintiff's power. *Id.* Finding for the defendant, the *Jackson* Court first noted that it doubted whether the commission ·possessed the authority to prevent the acts the plaintiff disputed. *Id.* at 356, 95 S.Ct. 449. Moreover, the Court explained, although the utility had filed a "tariff" with the commission indicating its policy of terminating for nonpayment, the commission had not placed its "imprimatur" on the utility's practice. *Id.* at 357, 95 S.Ct. 449. "Approval by a state utility commission of such a request by a regulated utility, where the commission has not put its own weight on the side of the proposed practice *by ordering it,* does not transmute a practice *initiated by the utility* and approved by the commission into 'state action.'" *Id.* (emphasis added).

Such is the case here. ·To begin with, there is no indication that the MPUC has any power to order Defendants to abide by Bangor Hydro's private contractual agreement with Plaintiff, or to prevent them from breaching it. Moreover, the mere fact that a representative of the MPUC refused to hold a hearing to discuss Plaintiff's gripe does not, in any way, place the "imprimatur" of the state upon Defendants' alleged breach. *Id.* Simply put, Defendants' actions lack a "sufficiently close nexus" with the State to burden Defendants with the mantle of state actors. *Id.* at 351, 95 S.Ct. 449; *see also Jemzura v. Pub. Serv. Comm'n,* 971 F.Supp. 702, 707 (N.D.N.Y.1997) (holding that electric company that refused to build power transmission lines to plaintiff's property was not a state actor for purposes of § 1983 action alleging due process and equal protection violations). Defendants are accordingly entitled to dismissal of Plaintiff's § 1983 claims.[2]

**B. State Law Claims**

·Because the Court finds that Plaintiff has failed to state a claim pursuant to 42 U.S.C. § 1983 upon which relief can be granted, the Court. declines to exercise pendent jurisdiction over his state law claims for unjust enrichment and injury to reputation. 28 U.S.C. § 1367(c).

**IV. CONCLUSION**

For the foregoing reasons, the Court GRANTS Defendants' Motion to Dismiss and DISMISSES Plaintiff's action WITH PREJUDICE.

.SO ORDERED.

---

**2.** Even supposing Defendants were state actors, courts have rejected the claim that a breach of contract constitutes a due process violation time and again. *See, e.g., Casey v. Depetrillo,* 697 F.2d 22, 23 (1st Cir.1983); *Jimenez v. Almodovar,* 650 F.2d 363, 370 (1st Cir.1981); *S & D Maintenance Co. v. Goldin,* 844 F.2d 962, 966 (2nd Cir.1988); *A. Aiudi & Sons v. Town of Plainville,* 862 F.Supp. 737 (D.Conn.1994). Plaintiff's equal protection claim, on the other hand, could survive 12(b)(6) review if Defendants were state actors, although the Court doubts the claim's ultimate viability. *See generally Starlight Sugar, Inc. v. Soto,* 253 F.3d 137, 145–46 (1st Cir.2001) (discussing "rational basis" analysis of equal protection challenges).